UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUSTEES OF OUTSTATE
MICHIGAN TROWEL TRADES
HEALTH & WELFARE FUND, et al.,

        Plaintiffs,

vs.

Case No. 09-CV-12856

HON. GEORGE CARAM STEEH

ABBOTT CONSTRUCTION, INC.,

        Defendant.
_____/

ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DOC. 12]

The plaintiffs are trustees of fringe benefit funds established through collective bargaining and maintained and administered pursuant to Section 302 of the Labor Management Relations Act of 1947 ("LMRA"), 29 USC §186, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC §1001, et seq. Plaintiffs have brought this action against defendant Abbott Construction to collect fringe benefit contributions plus statutory and other damages allegedly owing pursuant to the collective bargaining agreement ("CBA"), by which plaintiffs contend that Abbott Construction is bound. Plaintiffs seek to obtain payment of an indebtedness as set forth on an audit, and to compel cooperation with an updated audit. Plaintiffs filed a motion for summary judgment, and the court heard oral argument on the motion on March 17, 2010.

FACTUAL BACKGROUND

On June 21, 2001, Bruce Abbott, defendant's president, signed an acceptance of agreement by which Abbott Construction became bound to the collective bargaining agreement entered into by the Labor Relations Division of the Michigan Road Builders Association ("Road Builders Association") and the Cement Masons' International Association ("CMIA") of the United States and Canada ("initial CBA"). The initial CBA was in effect from June 1, 1998 to June 1, 2003. Abbott continued to be bound by the initial CBA, when it was renegotiated to cover the period June 1, 2003 to June 1, 2008. Each version of the initial CBA contained a termination clause which was not invoked by Abbott.

Under the terms of the Road Builders Agreement and the trust agreements incorporated therein, Abbott Construction became obligated to make fringe benefit contributions to the trust funds with respect to covered work performed by, and wages paid to, employees of Abbott Construction, and to submit their books and records for periodic inspection and audit.

On February 1, 2005, the Road Builders Association merged with the Associated Underground Contractors. On this date, the Labor Relations Division of the Michigan Infrastructure & Transportation Association ("MITA") was substituted as the contracting party in place of the Road Builders Association. (Glenn Bukoski Affidavit; Exhibit B, Substitution Agreement).

The parties disagree about whether Abbott became bound to a subsequent CBA between the Labor Relations Division of MITA and the CMIA ("subsequent CBA"). There is no evidence that Abbott received notice of the merger and substitution of

associations. Nor is there any evidence that Abbott gave a power of attorney on its behalf to assent to such substitution.

Plaintiffs filed this litigation pursuant to LMRA and ERISA for breach of the fringe benefit provisions of the initial CBA and subsequent CBA, to obtain judgment against Abbott Construction incorporating the balance owing on an audited indebtedness for the period of April 2007 through September 2009 plus statutory and other damages, requiring Abbott to cooperate with an updated audit, and awarding plaintiffs additional amounts revealed by the updated audit, plus statutory and other damages. An audit revealed an indebtedness of $53,251.24 for the period of April 2007 through September 2009. This number breaks down to $47,104.60 in contributions, $4,710.46 in liquidated damages resulting from the audit and $1,436.18 in liquidated damages resulting from late payments. (Robinson Affidavit, ¶4)

Abbott Construction's documentation submitted in response to interrogatories show that it owes contributions set forth on the audit for work performed from October 2007 through December 2007 and January 2008 through March 2008 (all periods under the initial CBA). Abbott also stated that it paid contributions for Mr. Baldemar Salinas for work performed in June 2008 (period covered by subsequent CBA). The audit confirms this position. At oral argument, Abbott's counsel explained that these payments were made because Abbott was not aware of the change in associations until the filing of this litigation.

The amount of contributions at issue for the period of April 1, 2007 through May 31, 2008 is $26,866.52. The amount of contributions at issue for the period June 1,

2008 through September 31, 2009 is $20,238.08. Plaintiffs also seek liquidated damages, interest and attorney fees.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)

(emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## ANALYSIS

Plaintiffs contend that Abbott became bound to the 2008-2013 subsequent CBA because of language in the 2003-2008 initial CBA, which required an employer to provide notice, by registered mail at least sixty days prior to the termination of the CBA or any subsequent CBA, that the employer will not be bound by future agreements reached by the Union and the Association.

> Finally, the Employer agrees that, unless he notifies the Union to the contrary by registered mail at least sixty (60) days prior to the termination date of this Agreement or any subsequent Agreement, the Employer will be bound by and adopt any Agreement reached by the Union and the Association during negotiations following the notice by the Union referred to in the preceding sentence.

(Plaintiffs' Exhibit C, p. 41). There is no evidence of a written termination by Abbott.

5

Plaintiffs also point out that Abbott paid contributions for work performed from June 2008 through November 2008, and April and May 2009. (Nowosacki Affidavit, ¶4 and Exhibit B). These contributions are within the period covered by the 2008-2013 subsequent CBA.

The Acceptance of Agreement signed by Abbott's president, shows that Abbott agreed to become a party to the CBA between the Road Builders Association and the CMIA as follows:

> In consideration of the benefits to be derived and other good and valuable consideration, the undersigned employer, although not a member of the Labor Relations Division of the Michigan Road Builders Association, does hereby join in, adopt, accept and become a party to the <u>collective bargaining agreement heretofore made by</u> the Labor Relations Division of the Michigan Road Builders Association with the Operative Plasterers' and Cement Masons' International Association of the United States and Canada and the International Union, Bricklayers and Allied Craftsmen, affiliated with the Building and Construction Trades Department of the AFL-CIO, including all of the provisions therein and any amendments made thereto, and including those provisions pertaining to contributions to Trust Funds and agrees to be bound by any Trust Agreement hereafter <u>entered into between these parties</u> and agrees to make contributions as required, and <u>authorizes these parties</u> to name the trustees to administer said Fund and ratifies and accepts such Trustees and the terms and conditions of the Trusts as if made by the undersigned.

(Acceptance of Agreement, emphasis added). The plain language of the Acceptance of Agreement makes clear that Abbott agreed only to be bound by the agreements entered by the particular parties to the initial CBA.

When a contract is unambiguous, it must be enforced according to its terms. <u>Hamade v. Sunoco, Inc.</u>, 271 Mich. App. 145, 166 (2006) (citation omitted). An unambiguous contract reflects the parties' intent as a matter of law, therefore courts interpret and enforce such a contract as written. <u>Phillips v. Homer (In re Smith Trust)</u>,

480 Mich. 19, 24 (2008). When faced with an unambiguous contract, the court will not consider parol evidence offered to vary or contradict the written contract. Hamade, 271 Mich. App. at 166.

In this case, the Acceptance of Agreement clearly states that Abbott agreed to be bound by the CBA and subsequent Trust Agreements entered into by the Road Builders Association and the CMIA. Abbott further agreed that those specific entities could enter into Trust Agreements and name Trustees, and that Abbott would be bound by those decisions.

At this point, the court's consideration of plaintiff's motion begins and ends with the plain language of the Acceptance of Agreement. Abbott's assent to be bound by the initial CBA is clear and unambiguous. In the absence of any ambiguity in the acceptance, the payments made or obligations incurred by Abbott after the merger of the associations are not relevant to an assessment of Abbott's responsibilities.

At this stage of the litigation, plaintiffs have not established their case that Abbott is bound by, and therefore is delinquent in fringe benefit contributions pursuant to, the CBA between MITA and the CMIA. Plaintiffs' motion for summary judgment is therefore DENIED.

Dated: March 18, 2010

                                          S/George Caram Steeh
                                          GEORGE CARAM STEEH
                                          UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 18, 2010, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk