UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUSTEES OF OUTSTATE
MICHIGAN TROWEL TRADES
HEALTH & WELFARE FUND, et al.,

        Plaintiffs,

                                      Case No. 09-CV-12856

vs.

                                      HON. GEORGE CARAM STEEH

ABBOTT CONSTRUCTION, INC.,

        Defendant.
_____/

ORDER GRANTING PLAINTIFFS'
MOTION FOR RECONSIDERATION [DOC. 22]

On March 18, 2010, this court entered an opinion and order denying plaintiffs'

motion for summary judgment.  Plaintiffs filed this motion for reconsideration on April 1,

2010.

Local Rule 7.1(g)(3) of the Local Rules of the United States District Court for the

Eastern District of Michigan provides:

> [M]otions for rehearing or reconsideration which merely present the same
> issues ruled upon by the court, either expressly or by reasonable
> implication, shall not be granted.  The movant shall not only demonstrate a
> palpable defect by which the court and the parties have been misled but
> also show that a different disposition of the case must result from a
> correction thereof.

The plaintiffs are trustees of fringe benefit funds established through collective

bargaining and maintained and administered pursuant to Section 302 of the Labor

Management Relations Act of 1947 ("LMRA"), 29 USC §186, and the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 USC §1001, et seq.  Plaintiffs

brought this action against defendant Abbott Construction to collect fringe benefit contributions plus statutory and other damages allegedly owing pursuant to the collective bargaining agreement ("CBA"), by which plaintiffs contend that Abbott Construction is bound. Plaintiffs seek to obtain payment of an indebtedness as set forth on an audit, and to compel cooperation with an updated audit.

At issue is a collective bargaining agreement negotiated by the Road Builders Association and the Cement Mason's International Association. This "initial CBA" covered the period from June 1, 1998 to June 1, 2003, and was later renegotiated to cover the period from June 1, 2003 to June 1, 2008. Abbott signed an Acceptance of Agreement, agreeing to be bound by the initial CBA on June 21, 2001. Part of the contributions sought to be recovered by plaintiffs are for the period of April 1, 2007 through May 31, 2008, in the amount of $26,866.52. This period is clearly within that covered by the initial CBA.

On February 1, 2005, the Road Builders Association merged with the Associated Underground Contractors. On this date, the Labor Relations Division of the Michigan Infrastructure & Transportation Association ("MITA") was substituted as the contracting party in place of the Road Builders Association. A "subsequent CBA" was entered between MITA and the Cement Mason's International Association, covering the period from June 1, 2008 to June 1, 2013.

While conceding that it was bound by the initial CBA, Abbott contends that it is not bound by the subsequent CBA. Abbott's position is that the language of the Acceptance of Agreement bound Abbott to the CBA made by the Road Builders Association and the Cement Masons' International Association only. Abbott objects to

payment of contributions for the period covered by the subsequent CBA, which amount to $20,238.08.

In its opinion and order, the court found that the Acceptance of Agreement signed by Abbott, clearly states that Abbott agreed only to be bound by the agreements entered by the particular parties to the initial CBA. The court then denied plaintiffs' motion for summary judgment. Plaintiffs have presented law in their motion for reconsideration, which compels the court to reconsider its decision.

Plaintiffs' action to collect fringe benefit contributions is brought pursuant to Section 515 of ERISA, 29 U.S.C. § 1145. In defending an action under Section 515, a defendant may not raise objections to the validity of the underlying CBA. Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310 (2nd Cir. 1990). While employee benefit plans are third party beneficiaries of the CBA between the employer and the union, and generally a third party beneficiary is subject to defenses that the promisor could raise in a suit by the promisee, ERISA has placed employee benefit plans in a superior position, analogous to a holder in due course. Id. at 313-14. Section 515 was added to ERISA for the purpose of "permit[ting] trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law - other than 29 U.S.C. 186." Id. at 314 (citing 126 Cong. Rec. 23,039 (1980)) (29 U.S.C. 186 prohibits employers from giving gifts or lending money to employees or labor organizations); Bakery and Confectionary Union and Industry Int'l Health Benefits and Pension Funds v. New Bakery Co., 133 F.3d 955, 959 (6th Cir. 1998).

Section 515 has been construed as a limitation on the defenses available to an employer when sued by an employee benefit plan. There are only three contract defenses that have been recognized by the courts of appeals as valid defenses to an action under Section 515: (1) the contract was void *ab initio* for fraud in the execution, (2) the pension contributions are themselves illegal, and (3) the employees have voted to decertify the union. Louisiana Bricklayers v. Alfred Miller General Masonry Contracting Co., 157 F.3d 404, 408-09 (5th Cir. 1998). Abbott's defense, that it was not obligated to pay contributions under the 2008-2013 subsequent CBA because that CBA was negotiated by MITA, is not among those defenses. "Once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole." Benson, 907 F.2d at 314.

Abbott cites to the decision in DeVito v. Hempstead China Shop, Inc., 38 F.3d 651 (2nd Cir. 1994), which distinguished defenses that call into question the fund's ability to enforce the contract as a whole and defenses based upon a "nonexistent contractual obligation." The "nonexistent contractual obligation" in DeVito was based on the employer's contention that it did not knowingly sign an agreement that required it to contribute to the health care fund. Courts that have found a nonexistent contractual obligation, that could be raised as a defense to a collection case, involve claims that a particular obligation that the funds seek to enforce does not exist. See, e.g., New Bakery Co., 133 F.3d at 959 (issue of whether contributions were required on part-time employees); Teamsers Ind. Employees Welvare Fund v. Rolls-Royce Motor Cars, Inc.,

4

989 F.2d 132, 138 (3rd Cir. 1993) (issue of whether contributions were required on probationary employees).

In this case, Abbott calls into question the contract as a whole with its position that it is not bound by the subsequent CBA because it names MITA rather than MRBA. "[W]hen a union claims arguable successor rights, the proper methods for adjudication of this labor law question are either arbitration under the CBA or timely litigation before the NLRB." Louisiana Bricklayers, 157 F.3d at 409. Abbott's attempt to argue that no contract exists for the pension fund to enforce might be an issue of labor law, but it is not one properly before this court. Congress' intent in enacting Section 515 was clearly to protect collection efforts by employee benefit funds:

> By allowing multiemployer funds to enforce the literal terms of an employer's commitment, section 515 increases the reliability of their income stream, reduces the cost and delay associated with collection actions, and reduces or eliminates the cost of monitoring the formation of collective bargaining agreements.

New Bakery Co., 133 F.3d at 959.

The court's opinion denying plaintiffs' motion for summary judgment contained a clear error of law, the correction of which results in a different disposition of the case. Now, therefore, for the reasons stated in this opinion and order,

IT IS HEREBY ORDERED THAT plaintiffs' motion for summary judgment is GRANTED.

IT IS HEREBY FURTHER ORDERED that Abbot Construction is bound to pay fringe benefit contributions of $57,936.75, plus attorneys' fees and post-judgment interest. The $57,936.75 represents the sum of $47,104.60 in unpaid contributions, $4,685.51 in pre-judgment interest, $4,710.46 in liquidated damages on unpaid

5

contributions, and $1,436.18 in liquidated damages on contributions paid after they were due.

So ordered.

Dated: May 10, 2010

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 10, 2010, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk